STATE TREASURER v SPRAGUE

Docket No. 281961. Submitted April 8, 2009, at Lansing. Decided June 4, 2009, at 9:05 a.m.

> The State Treasurer brought an action in the Bay Circuit Court against Timothy Sprague, Dow Chemical Employees Credit Union, and John Gilman, seeking reimbursement for the cost of Sprague's incarceration pursuant to the State Correctional Facility Reimbursement Act (SCFRA), MCL 800.401 *et seq.* The court, William J. Caprathe, J., entered an order requiring Sprague to notify Dow Chemical Company, his former employer, that his pension benefits should be mailed to his prison address rather than deposited directly into his pension account at the credit union and requiring the credit union to transfer 90 percent of the pension account funds to the plaintiff. Sprague appealed.

> The Court of Appeals *held*:

> The trial court's order does not violate the anti-alienation provision of the Employee Retirement Income Security Act (ERISA), 29 USC 1056(d)(1). ERISA forbids the alienation or assignment of retirement plan benefits. As decided in *State Treasurer v Abbott*, 468 Mich 143 (2003), directing a pension fund to send pension payments to a prisoner's prison account, where they can be accessed for SCFRA reimbursement purposes, does not violate ERISA's anti-alienation provision. A contrary holding in *DaimlerChrysler Corp v Cox*, 447 F3d 967 (CA 6, 2006), is not binding on this panel of the Court of Appeals given that it is not a United States Supreme Court decision. *Abbott* binds the panel until the Michigan Supreme Court overrules or modifies it.

> Affirmed.

> SHAPIRO, J., concurring in part and dissenting in part, agreed that under *Abbott*, the plaintiff had the authority to require Sprague to notify his former employer that his pension benefits should be mailed to his prison address rather than deposited into his credit union account. He also agreed that once pension funds have been deposited into a prisoner's account at prison or a financial institution outside prison, the plaintiff may obtain an order directing disbursement to the state. However, Judge SHAPIRO disagreed that the state itself may direct a pension plan where to

disburse the prisoner's pension benefits. As decided in *Daimler-Chrysler*, the ERISA anti-alienation provision obligates a pension plan to protect benefits from alienation at least up to the point of payment.

PRISONS AND PRISONERS — STATE CORRECTIONAL FACILITY REIMBURSEMENT ACT — PENSIONS — EMPLOYEE RETIREMENT INCOME SECURITY ACT.

A trial court may order a prisoner to direct the prisoner's former employer to send the prisoner's pension benefits to prison and may order a financial institution of the prisoner to transfer pension monies in an account to the State Treasurer, both for purposes of reimbursing the state for the cost of the prisoner's incarceration, without violating the anti-alienation provision of the Employee Retirement Income Security Act (29 USC 1056[d][1]; MCL 800.401 *et seq.*).

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, and *Kathleen A. Gardiner*, Assistant Attorney General, for the State Treasurer.

Timothy Sprague, *in propria persona*.

Before: BANDSTRA, P.J., and WHITBECK and SHAPIRO, JJ.

BANDSTRA, P.J. Defendant Timothy Sprague, acting *in propria persona*, appeals as of right the circuit court's order enforcing the state's right to seek reimbursement for the cost of his incarceration. Specifically, the order (1) required Sprague to notify his former employer, Dow Chemical Company, that his pension benefits should be mailed to his prison address rather than deposited directly into his account at defendant Dow Chemical Employees Credit Union (hereafter referred to as the pension account) and (2) required the credit union to transfer assets held in the pension account to the State Treasurer (plaintiff). We conclude that neither of these two provisions violates the anti-alienation provision of the Employee Retirement Income Security Act (ERISA), 29 USC 1056(d)(1), and affirm.

Under the State Correctional Facility Reimbursement Act (SCFRA), MCL 800.401 *et seq.*, the state is entitled to attach prisoners' assets to reimburse the state for the cost of imprisonment. See MCL 800.403. Plaintiff brought this action against Sprague and the credit union, seeking SCFRA reimbursement from Sprague's pension benefits. The trial court entered an order directing Sprague to notify Dow Chemical that all future pension benefits should be mailed directly to him at his prison address, apparently for deposit into his prison account, and further ordered the warden of the prison to make monthly distributions equal to 90 percent of the assets received, from the pension account to plaintiff, as reimbursement of costs under the SCFRA. Further, the order directed defendant credit union to disburse 90 percent of the funds already held in Sprague's pension account to plaintiff, with the remainder distributed to Sprague, and then to close the pension account.

Sprague claims that the order violates ERISA's anti-alienation provision, which states that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 USC 1056(d)(1). In making this argument, Sprague primarily relies on *DaimlerChrysler Corp v Cox*, 447 F3d 967 (CA 6, 2006); in response, plaintiff primarily relies on *State Treasurer v Abbott*, 468 Mich 143, 152, 158-159; 660 NW2d 714 (2003). See generally *Selflube, Inc v JJMT, Inc*, 278 Mich App 298; 750 NW2d 245 (2008).

In *Abbott*, the earlier of these decisions, our Supreme Court reinstated the trial court's order that the defendant prisoner direct his monthly pension proceeds to his prison address. *Abbott, supra* at 145. As is the case here, the order applied against both the prisoner and the pension fund: "the pension fund itself was directed to send the benefit payments to defendant's prison

address in the event that defendant did not ask the fund to do so." *Id.* at 152. The Court reasoned that this did not constitute assignment or alienation in violation of ERISA because "[a] property interest is assigned or alienated when it has been transferred *to another person.* The trial court here did not order defendant to have his pension proceeds sent to *another person's* address[, but rather] the court ordered defendant to receive the benefits *at his own address.*" *Id.* at 151 (emphasis in original). The Court also concluded that the prison warden's access to the defendant's prison account did not constitute a transfer of legal title or interest in the defendant's funds. *Abbott, supra* at 151. Moreover, the Court found that an involuntary deposit "does not establish an assignment unless a person other than the beneficiary acquires a right or interest enforceable against the plan." *Id.*

In *DaimlerChrysler, supra* at 968-969, Daimler-Chrysler Corporation, as fiduciary of its pension plan, brought a declaratory action in the United States District Court for the Eastern District of Michigan asking the federal court to decide whether state court orders issued pursuant to the SCFRA violated ERISA's anti-alienation provision. The contested orders required four former DaimlerChrysler employees, who were inmates in Michigan correctional facilities, to notify DaimlerChrysler that their pension benefit payments should be mailed to them at their prison addresses. *Id.* at 969. Only one of the inmates complied, so the defendant, the Michigan Attorney General, sent notices to DaimlerChrysler informing it that future benefit checks should be mailed to the inmates at their institutional addresses. *Id.* at 970. DaimlerChrysler did not comply with the notices and instead brought a declaratory action to determine whether the SCFRA was preempted by ERISA and whether state officials were

precluded from enforcing the orders against the prisoners to the extent that they violated ERISA. *Id.*

The Sixth Circuit, affirming the federal district court, noted that "ERISA's anti-alienation provision obligates a plan to protect benefits from alienation 'at least up to the point of payment' "; thus, "once a pension plan has sent benefit payments to a beneficiary[,] . . . the attachment of those funds by a creditor does not constitute an alienation." *DaimlerChrysler, supra* at 974. However, the SCFRA notices sent by the defendant to the pension plan operated on plan benefits before they were sent to their beneficiaries. *Id.* The court therefore determined that the SCFRA notices and orders were "void to the extent that they direct[ed] DaimlerChrysler to send benefits to an address not designated by a beneficiary. The state may still send the notices, but DaimlerChrysler is not obligated to comply with them." *Id.* at 975.

The Sixth Circuit further held that states were not precluded from seeking reimbursement from a prisoner through his or her pension benefits, stating that a "state can take action against the prisoner by placing a constructive trust on" pension funds after benefits have been received by the prisoner. *DaimlerChrysler, supra* at 976. However, the court expressly declined to decide whether the state could order a prisoner to direct a pension plan to send the prisoner's assets to a prison account, which could be accessed by the state for SCFRA reimbursement: "We are not passing, however, on the question of whether state officials can compel prisoners to send their address changes to the Pension Plan because that issue is not before us." *Id.*[1]

---

[1] The Sixth Circuit Court found that *Abbott* was unpersuasive, stating that although the pension payments had been sent directly to the prisoners, this was

Comparing *Abbott* and *DaimlerChrysler*, we conclude that they are not in conflict with respect to the question whether the order requiring Sprague to direct Dow Chemical to send pension payments to his prison account, where they can be accessed for SCFRA reimbursement purposes, violates ERISA's anti-alienation provision. The *Abbott* Court clearly held that such an order does not violate ERISA, and this question was specifically not addressed by the court in *Daimler-Chrysler*. Accordingly, following *Abbott*, we conclude that the trial court's order here requiring Sprague to direct Dow Chemical to send pension payments to his prison account, rather than depositing them into his pension account, must be upheld.

We note that there is a conflict between *Abbott* and *DaimlerChrysler* on a question that both courts addressed, whether a state court may order a pension plan to send pension payments to a prison account, rather than depositing them into a prisoner's pension account, without the direction of the prisoner.[2] *Abbott* clearly

---

irrelevant to the question of alienation, because (1) the prisoners [in *Abbott*] did not want to receive the payments at their institutional addresses, (2) Michigan law strictly controls a prisoner's bank account and how the funds may be used, and (3) the state already effectively owned 90% of the payments even before they were received. The fact that the payments were sent to the prisoner's institutional address is therefore a mere formalism that is not dispositive of whether an alienation has occurred[.] [*Id.* at 976.]

[2] That order is practically more effective than one that merely directs a prisoner to require that payments be sent to a prison account rather than deposited into a pension account. While a prisoner might ignore such an order, the only ramifications would be possible contempt proceedings or negative implications on the parole process, MCL 800.403(a); in contrast, once a pension plan remits payment of a prisoner's pension assets into a prison account pursuant to a court order, they become available for SCFRA reimbursement.

held that orders of this nature are not in violation of ERISA's anti-alienation provision; *DaimlerChrysler* clearly held that they are. Thus, we are faced with determining whether to apply *DaimlerChrysler* or *Abbott* on this question of federal statutory interpretation. We conclude that we are bound by *Abbott*, not *Daimler-Chrysler*.

As our Supreme Court explained in *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004), and reiterated in *People v Gillam*, 479 Mich 253, 261; 734 NW2d 585 (2007), "[a]lthough state courts are bound by the decisions of the United States Supreme Court construing federal law, there is no similar obligation with respect to decisions of the lower federal courts . . . ."[3] See also *Cowles v Bank West*, 476 Mich 1, 33; 719 NW2d 94 (2006) ("When construing federal statutes and regulations we are governed by authoritative decisions of the federal courts. Where no decision on a particular issue has been rendered by the United States Supreme Court, we are free to adopt decisions of the lower federal courts if we find their analysis and conclusions persuasive and appropriate for our jurisprudence." [Citations and quotations marks omitted.]); *Yellow Freight Sys, Inc v Michigan*, 464 Mich 21, 29 n 10; 627 NW2d 236 (2001) ("Michigan adheres to the rule that a state court is bound by the authoritative holdings of federal courts upon federal questions, including interpretations of federal statutes. However,

---

[3] As our Supreme Court explained further in *Abela,* where a Michigan court is "faced with conflicting decisions of lower federal courts" it is,

> of course, . . . "free to choose the view which seems most appropriate one to [it]." However, that statement does not establish the converse—that where there is no such conflict, [Michigan courts] are bound to follow the decisions of even a single lower federal court. Although federal court decisions may be persuasive, they are not binding on state courts. [*Abela, supra* at 606-607.]

where there is no United States Supreme Court decision upon the interpretation in question, the lower federal courts' decisions, while entitled to respectful consideration, are not binding upon this Court." [citations omitted]). Thus, we are not bound by the interpretation of ERISA set forth by the Sixth Circuit in *DaimlerChrysler*.

Rather, this Court remains bound by our Supreme Court's decision in *Abbott* until such time as our Supreme Court instructs otherwise: "it is the Supreme Court's obligation to overrule or modify case law if it becomes obsolete, and until [that] Court takes such action, the Court of Appeals and all lower courts are bound by that authority." *Boyd v WG Wade Shows*, 443 Mich 515, 523; 505 NW2d 544 (1993), overruled on other grounds *Karaczewski v Farbman Stein & Co*, 478 Mich 28 (2007). "The obvious reason for this is the fundamental principle that only [the Supreme] Court has the authority to overrule one of its prior decisions. Until [it] does so, all lower courts and tribunals are bound by that prior decision and must follow it even if they believe that it was wrongly decided or has become obsolete." *Paige v Sterling Hts*, 476 Mich 495, 524; 720 NW2d 219 (2006). See also *People v Metamora Water Service, Inc*, 276 Mich App 376, 387-388; 741 NW2d 61 (2007) ("It is the duty of the Supreme Court to overrule or modify caselaw if and when it becomes obsolete, and the Court of Appeals and the lower courts are bound by the precedent established by the Supreme Court until it takes such action.").

Sprague also argues that the court's order violates his right to freedom of speech under the First Amendment, US Const, Am I. According to Sprague, plaintiff pursued this action against him in retaliation for exercising his First Amendment right to refuse to notify

Dow Chemical of his change of address. Sprague does not explain why his refusal constitutes protected conduct, and we note that this Court has stated, in the context of denying a "void for vagueness" challenge to SCFRA, that "[t]he statute . . . impinges on no First Amendment freedoms, proscribes no conduct, and sets forth no offense which defendant . . . is accused of having committed." *State Treasurer v Wilson (On Remand)*, 150 Mich App 78, 81; 388 NW2d 312 (1986). In any event, "[i]t is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mudge v Macomb Co*, 458 Mich 87, 105; 580 NW2d 845 (1998) (citation and quotation marks omitted). Failure to brief a question on appeal is tantamount to abandoning it. *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001). This same conclusion applies equally to vague and conclusory constitutional claims that defendant might otherwise make on appeal.[4]

Sprague argues that MCL 800.403a is unconstitutional because it violates federal law, reasoning we have already concluded to be meritless, and because a defendant's violation of the statute may be considered by the Parole Board in its determinations. MCL 800.403a provides:

---

[4] Sprague also argues that the trial court's order was invalid because collateral estoppel barred the court from considering plaintiff's argument. According to Sprague, plaintiff's claims were previously decided in "Case No. 05-3745-CZ." While Sprague does not otherwise identify or discuss that case, plaintiff's brief says it was an earlier action in the trial court resulting in an order similar to that at issue here, but plaintiff does not explain why a second action (and order) was necessary. In any event, Sprague has abandoned any collateral estoppel claim for lack of a proper argument.

(1) A prisoner shall fully cooperate with the state by providing complete financial information for purposes under this act.

(2) The failure of a prisoner to fully cooperate as provided in subsection (1) may be considered for purposes of a parole determination under . . . [MCL] 791.235 . . . .

Defendant does not specify how this provision renders the SCFRA unconstitutional. Moreover, we note that our Supreme Court has held that the SCFRA does not violate the Equal Protection Clause because it "applies to all prisoners equally in a certain class," and because

[a]ll persons who have an estate are subject to the act. The amount of the liability can be definitely determined. The provision that the court is empowered to take into consideration the moral and legal obligations of the prisoner applies to all persons with estates. An abuse of discretion by a trial judge may be reviewed. We find no unreasonable classification. [*Auditor General v Hall*, 300 Mich 215, 225; 1 NW2d 516 (1942).]

Defendant has not demonstrated that the SCFRA violates the constitution's equal protection provision. Defendant does not claim that the statute's burden on him is unique, or that the trial court acted arbitrarily by entering the order.

Finally, we reject defendant's claim that the trial court lacked subject-matter jurisdiction to hear the case. Defendant claims that the court was barred from hearing the case by *DaimlerChrysler*. However, while *DaimlerChrysler* addressed the merits of an issue defendant raises on appeal, as discussed above, it has nothing to say regarding the circuit court's jurisdiction to hear this case.

We affirm.

WHITBECK, J., concurred.

SHAPIRO, J. (*concurring in part and dissenting in part*). I concur with the majority's conclusion that under *State Treasurer v Abbott*, 468 Mich 143; 660 NW2d 714 (2003), the State Treasurer had the authority to require defendant to notify his former employer, Dow Chemical Company, that his pension benefits should be mailed to his prison address rather than deposited directly into his credit union account. I also agree that once pension funds have been deposited into a prisoner's account, whether that is a prison account or an account held in an outside financial institution, the State Treasurer may obtain an order directing that institution to disburse the appropriate portion of those funds to the state. However, I do not agree that the state itself may direct the pension plan where to disburse the prisoner's pension benefits. As set forth in *Daimler-Chrysler Corp v Cox*, 447 F3d 967 (CA 6, 2006), the Employee Retirement Income Security Act, (ERISA), 29 USC 1056(d)(1), contains an anti-alienation provision that "obligates a plan to protect benefits from alienation 'at least up to the point of payment.' " *Id.* at 974, quoting *Guidry v Sheet Metal Workers Nat'l Pension Fund*, 39 F3d 1078, 1082 (CA 10, 1994) (en banc). I believe that the reasoning of *DaimlerChrysler* is persuasive particularly in its conclusion that a state order to the pension fund to deposit the disbursements into a prison account is a "mere formalism that is not dispositive of whether an alienation has occurred." *Id.* at 976.

Accordingly, I respectfully dissent from that portion of the opinion approving an order directing the pension fund to direct the monies to the prison account. I concur in all other respects.